UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

                          Plaintiff,

- v. -

CITY OF NEW YORK,

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action No.
23-cv-4129

(_____, J.)
(_____, M.J.)

## COMPLAINT

Plaintiff United States of America ("the United States"), by its attorney, Breon Peace, United States Attorney for the Eastern District of New York, Ekta R. Dharia, Assistant United States Attorney, of counsel, acting at the request of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### NATURE OF ACTION

1. This is a civil action pursuant to Sections 106(a) and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606(a) and 9607(a).

2. The United States seeks an order against Defendant City of New York (the "City of New York") directing it to (a) perform certain response activities pursuant to CERCLA Section 104(a), 42 U.S.C. § 9604(a), and (b) pay the response costs incurred and to be incurred by the United States CERCLA Section 107(a), 42 U.S.C. § 9607(a), including, but not limited to, investigative and other response costs, in connection with the release or threatened release of hazardous substances into the environment at and/or from an area known as the Wolff-Alport Site, located in Queens, New York.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367, and 42 U.S.C. § 9613(b).

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 112(c), 1391(b), and 42 U.S.C. § 9613(b) because the releases or threatened releases of hazardous substances at and/or from the Wolff-Alport Site occurred in this district and because the acts or omissions giving rise to the claims occurred in this district.

## PARTIES

5. Plaintiff is the United States, acting on behalf of EPA, an agency of the United States.

6. Defendant is the City of New York, a municipal corporation organized under the laws of the State of New York.

## STATUTORY BACKGROUND

7. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. § 9604(a); *see* 42 U.S.C. § 9601(25).

8. CERCLA Section 104(a)(1) provides in relevant part:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may represent an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare of the environment. . . .

42 U.S.C. § 9604(a)(1).

    9.    CERCLA Section 104(b) provides in relevant part:

Whenever the President is authorized to act pursuant to [Section 104(a)] or whenever the President has reason to believe that a release has occurred or is about to occur, . . . he may undertake such investigations, monitoring, surveys, testing and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release or threat thereof, the source and nature of the hazardous substances, pollutants, or contaminants involved, and the extent of the danger to the public health or welfare or to the environment. . . .

42 U.S.C. § 9604(b).

    10.    CERCLA Section 106(a), 42 U.S.C. § 9606(a), provides in relevant part:

[W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat…. The President may also . . . take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and the environment.

42 U.S.C. § 9606(a).

    11.    For response actions pursuant to, *inter alia*, CERCLA Sections 104(a), 104(b), and 106(a), the President's authority has been delegated to EPA.

    12.    CERCLA Section 107(a) provides, in relevant part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section – (1) the owner and operator of a vessel or facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, arrangement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, [–] shall be liable for – (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . .

42 U.S.C. § 9607(a).

## FACTUAL ALLEGATIONS

### The Wolff-Alport Site

13. From the 1920s until 1954, the Wolff-Alport Chemical Company (the "Wolff-Alport Company") operated a facility at 1127-1129 Irving Avenue, Queens, New York.

14. The operations of the Wolff-Alport Company included the importing and processing of monazite sand, from which rare earth elements were extracted and sold to various commercial entities.

15. The process residues from the extraction process contained radioactive materials, including thorium and uranium, along with their decay products, such as radium.

16. Such materials contain radionuclides, which are hazardous substances pursuant to CERCLA Section 101(14), 42 U.S.C. § 9601(14), 40 C.F.R. Table 302.4, and Appendix B to 40 C.F.R. Section 302.4.

17. These radioactive process wastes were disposed of in the sewer system as well as buried at the Wolff-Alport Site at or near the Wolff-Alport Chemical Company's former facility.

18. In 2009, the New York City Department of Design and Construction conducted an investigation that revealed that the soil under the pavement/ground surface at the Wolff-Alport Site contained visible characteristics of the process waste. The investigation further revealed that the process waste was consistently present within the top four feet under the pavement/ground surface, and that in one area at the Wolff-Alport Site, the process waste was present to a depth of approximately eight to ten feet.

19. In 2013, the New York City Department of Environmental Protection conducted an investigation that revealed radiological constituents above background concentrations in the sewer

system originating from the former Wolff-Alport Company facility discharge point to at least one quarter of a mile away at the intersection of Irving Avenue and Halsey Street in Queens, New York.

**The Prior Time-Critical Removal Action at the Wolff-Alport Site**

20. In 2013, EPA conducted a time-critical removal action at the Wolff-Alport Site. As a part of the time-critical removal action, EPA installed a combination of lead, steel, and concrete shielding within the Wolff-Alport Company former facility building located at 1127-1129 Irving Avenue at the Wolff-Alport Site and along a portion of the Irving Avenue sidewalk adjacent to the former Wolff-Alport Company facility. During that time-critical removal action, EPA also installed a radon mitigation system in the 1129 Irving Avenue portion of the Wolff-Alport Site and covered a former rail spur at the rear of the Wolff-Alport Company former facility property with a layer of rock and clean fill to reduce exposure to waste material. The rail spur area had been used to unload monazite sand and load other product for transport.

21. After EPA completed its work on the removal action, on August 10, 2017, EPA entered into an administrative settlement with the City of New York, pursuant to CERCLA Section 122(h), 42 U.S.C. § 9622(h). The settlement required the City of New York to reimburse EPA $659,037.00 for EPA's past response costs for its above-described removal activities performed on the sidewalks owned by the City of New York during the removal action.

**Placement of the Wolff-Alport Site on the National Priorities List**

22. EPA included the Wolff-Alport Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register, on May 12, 2014. *See* 42 U.S.C. § 9605; 63 Fed. Reg. 40, 182-01.

23. The National Priorities List is a list of sites considered by EPA to be national

priorities for long-term evaluation and response among known releases or threatened releases of hazardous substances, pollutants, or contaminants.

### The Remedial Action at the Wolff-Alport Site

24. From September 2015 to March 2017, EPA conducted extensive sampling at the Wolff-Alport Site as part of a remedial investigation. EPA tested soil, sewer system sediment and materials, groundwater, air, and building materials, and collected samples to delineate the nature and extent of the radioactive waste contamination.

25. EPA completed its remedial investigation and feasibility study reports, based on its remedial investigation activities, in July 2017.

26. In July 2017, EPA released for public comment a proposed plan for cleanup of the Site. The proposed plan included a description of a number of remedial alternatives considered by EPA and EPA's specific, preferred remedial alternative and the rationale for that preference.

27. The preferred remedial alternative included the demolition of certain buildings to remove contaminated building materials and to access contaminated soils underneath them at the Wolff-Alport Site, and the proper offsite disposal of debris and the excavated soils beneath the buildings and otherwise at the Wolff-Alport Site that exceed remediation criteria. These activities necessitate the relocation of the current tenants in those buildings at the Wolff-Alport Site slated to be razed.

28. On September 26, 2017, EPA formally selected the preferred remedial alternative as the selected remedy for the Wolff-Alport Site. *See* EPA, *Record of Decision, Wolff-Alport Chemical Company Superfund Site, Ridgewood, Queens County, New York*, available at https://semspub.epa.gov/work/02/528285.pdf (Sept. 2017).

29. In December 2017, EPA sent a Special Notice letter to the City of New York. The

letter described the work that would need to be performed at the portion of the Site owned by the City of New York as part of the selected remedy, including the removal and replacement of a portion of a sewer pipe, jet washing other portions of the sewer pipe, additional excavation (if warranted) of contaminated soils, and off-site disposal of any such contaminated materials.  EPA also sought reimbursement of its past costs, including cost associated with its work on the remedial investigation and feasibility study, from the City of New York.

30. The City of New York responded by letter dated February 27, 2018, stating that it was willing to cooperate with EPA to develop a scope and timeframe for the work that is needed to be performed.

## FIRST CLAIM FOR RELIEF

### (Injunctive Relief Under CERCLA Section 106)

31. The United States repeats and realleges each of the foregoing paragraphs of this Complaint as if set forth fully herein.

32. CERCLA Section 106(a), 42 U.S.C. § 9606(a), provides the following in relevant part:

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may . . . secure such relief as may be necessary to abate such danger or threat . . . .

42 U.S.C. § 9606(a).

33. The President, through his delegate, the Director of the Superfund Emergency Management Division of EPA Region 2, has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of a release of hazardous substances or a threatened release of hazardous substances at or from the Wolff-Alport Site.

34. CERCLA Section 106(a), 42 U.S.C. § 9606(a), authorizes the United States to bring an action to secure such relief as may be necessary to abate a danger or threat at the Wolff-Alport Site. In the Record of Decision, EPA made determinations as to the response action that is necessary to abate a danger or threat with respect to soil and sediment contamination at the Wolff-Alport Site.

35. Pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), the City of New York is liable to perform the remedial actions identified in the Record of Decision relating to property owned by the City of New York where EPA has determined action is necessary to abate a danger or threat with respect to soil and sediment contamination at the Wolff-Alport Site.

## SECOND CLAIM FOR RELIEF

### (Cost Recovery Under CERCLA Section 107)

36. The United States repeats and realleges each of the foregoing paragraphs of this Complaint as if set forth fully herein.

37. CERCLA Section 107(a), 42 U.S.C. § 9607(a), provides the following in relevant part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section – (1) the owner and operator of a vessel or facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for – (A) all costs of removal or remedial action incurred by the United States Government … not inconsistent with the national contingency plan; …

42 U.S.C. § 9607(a).

38. The Wolff-Alport Site is a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9).

8

39. There have been and continue to be "releases" or "threats of releases of hazardous substances" within the meaning of CERCLA Sections 101(14) and 101(22), 42 U.S.C. §§ 9601(14) and 9601(22), into the environment at the Wolff-Alport Site.

40. The releases or threats of releases of hazardous substances at the Wolff-Alport Site have caused the United States to incur response costs as the term "response" is defined in CERCLA Section 101(25), 42 U.S.C. § 9601(25), in connection with the Wolff-Alport Site, including, but not limited to, costs of investigating and engaging in response actions in connection with the Wolff-Alport Site. The United States will continue to incur response costs in connection with the response actions at the Wolff-Alport Site in the future.

41. The costs of the response actions taken and to be taken by the United States at the Wolff-Alport Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

42. The City of New York is the current owner of property at the Wolff-Alport Site, including but not limited to, roads, sidewalks, and sewers, within the meaning of 42 U.S.C. § 9607(a).

43. The City of New York is a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21).

44. The City of New York is a covered person pursuant to CERCLA Section 107(a)(1)-(2), 42 U.S.C. § 9607(a)(1)-(2).

45. The United States has not been reimbursed for all response costs incurred by EPA, including, but not limited to, investigation, remedy selection, and remedial action costs.

46. Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), the City of New York is jointly and severally liable for all response costs incurred or to be incurred by the United States relating to property owned by the City of New York where EPA has determined action is

necessary, as well as other indivisible costs.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following of this Court:

A.  On the First Claim for Relief, enter judgment pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), against the City of New York in favor of the United States to perform certain response actions selected by EPA in order to abate the conditions at the Wolff-Alport Site.

B.  On the Second Claim for Relief, enter judgment pursuant to CERCLA Section 107(a), 42 U.S.C. §9607(a), against the City of New York in favor of the United States for certain response costs incurred, and to be incurred, by the United States for actions conducted at or in connection with the Wolff-Alport Site, including interest, related oversight costs, and related indirect, administrative, investigative, and enforcement costs;

C.  Grant the United States such other and further relief as this Court may deem appropriate.

Dated:  June 5, 2023
Brooklyn, New York

BREON PEACE
United States Attorney
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

BY:  */s/ Ekta R. Dharia*
EKTA R. DHARIA
Assistant U.S. Attorney
(718) 254-7520
ekta.dharia@usdoj.gov