UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

                 Plaintiff,

     v.

THE CITY OF NEW YORK,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 23-cv-4129

## REMEDIAL ACTION
## CONSENT JUDGMENT

**TABLE OF CONTENTS**

I.      BACKGROUND ........................................................................................................... 1
II.     JURISDICTION ............................................................................................................ 2
III.    PARTIES BOUND ........................................................................................................ 2
IV.     DEFINITIONS ............................................................................................................... 3
V.      GENERAL PROVISIONS ............................................................................................ 6
VI.     PERFORMANCE OF THE WORK ............................................................................. 7
VII.    REMEDY REVIEW .................................................................................................... 10
VIII.   PROPERTY REQUIREMENTS ................................................................................ 10
IX.     FINANCIAL ASSURANCE ....................................................................................... 12
X.      PAYMENTS FOR RESPONSE COSTS .................................................................... 15
XI.     INDEMNIFICATION AND INSURANCE ................................................................ 18
XII.    FORCE MAJEURE ..................................................................................................... 19
XIII.   DISPUTE RESOLUTION ........................................................................................... 20
XIV.    STIPULATED PENALTIES ....................................................................................... 22
XV.     COVENANTS BY PLAINTIFF .................................................................................. 25
XVI.    COVENANTS BY SETTLING DEFENDANT ......................................................... 27
XVII.   EFFECT OF SETTLEMENT; CONTRIBUTION .................................................... 29
XVIII.  ACCESS TO INFORMATION ................................................................................... 30
XIX.    RETENTION OF RECORDS ...................................................................................... 31
XX.     NOTICES AND SUBMISSIONS ............................................................................... 32
XXI.    RETENTION OF JURISDICTION ............................................................................ 33
XXII.   APPENDICES ............................................................................................................. 33
XXIII.  MODIFICATION ........................................................................................................ 34
XXIV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .............................. 34
XXV.    SIGNATORIES/SERVICE ......................................................................................... 34
XXVI.   FINAL JUDGMENT ................................................................................................... 35

## I.    BACKGROUND

A.    The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.    The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Wolff-Alport Chemical Company Superfund Site (the "Site") in Ridgewood, Queens County, New York, together with accrued interest; and (2) performance of response activities by the defendant, the City of New York ("Settling Defendant") at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.    The federal natural resource trustee was made aware by EPA of negotiations with Settling Defendant regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship prior to any negotiations and of the the opportunity for the trustee to participate in the negotiation of this Consent Judgment ("CJ").

D.    Settling Defendant has entered into this CJ and does not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

E.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on May 12, 2014.

F.    EPA has undertaken response activities at the Site, including a removal site evaluation, radon surveying and sampling activities, a shielding pilot study, a removal action involving the installation of concrete and concrete/lead shielding inside some buildings at the Site and along portions of the Irving Avenue sidewalk, and a remedial investigation and feasibility study ("RI/FS").

G.    EPA completed a RI Report on July 3, 2017, and EPA completed a FS Report on July 20, 2017.

H.    Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of a proposed plan for remedial action on July 27, 2017, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. An administrative record upon which the Acting Director of the Emergency and Remedial Response Division (which was thereafter renamed the Superfund and Emergency Management Division), EPA Region 2, based the selection of the response action was made available to the public.

I.    Following the public comment period, EPA documented the selection of a remedial action for the Site in a Record of Decision ("ROD"), executed on September 26, 2017

1

("Remedial Action"), on which the State of New York (the "State") provided its concurrence. The ROD calls for, *inter alia,* the permanent relocation of certain commercial businesses and residents and addressing the contamination at the Site.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

J.      On September 23, 2019, EPA issued a unilateral administrative order for remedial design ("UAO") to Settling Defendant, in which EPA directed it to perform a remedial design regarding the portion of the remedy to be conducted on Settling Defendant-owned property, including roads, sidewalks, and sewers ("Remedial Design").  On September 30, 2019, Settling Defendant submitted a notice of intent to comply with the UAO to EPA.  Pursuant to the UAO, Settling Defendant has been performing the directed actions.

K.      As set forth in this CJ, Settling Defendant agrees to implement the Remedial Action on Settling Defendant-owned property and certain adjacent areas impacted by conditions related to the New York City sewer system in accordance with the approved Remedial Design prepared under the UAO and the attached Statement of Work ("SOW"), and Settling Defendant is not required under this CJ to perform remedial activities on other areas of the Site unrelated to the New York City sewer system, streets, and sidewalks.  Based on the information presently available, EPA believes that the Work required under this CJ will be properly and promptly conducted by Settling Defendant if conducted in accordance with this CJ and its appendices.

L.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Defendant shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

M.      The Parties recognize, and the Court by entering this CJ finds, that this CJ has been negotiated by the Parties in good faith, and implementation of this CJ will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this CJ is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.      JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendant. Solely for the purposes of this CJ and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this CJ or this Court's jurisdiction to enter and enforce this CJ.

## III.      PARTIES BOUND

2.      This CJ is binding upon the United States and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate or other legal status of Settling

2

Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this CJ.

3.      Settling Defendant shall provide a copy of this CJ to each contractor hired to perform the Work and to each person representing Settling Defendant with respect to the Work, and Settling Defendant shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this CJ. Settling Defendant or its contractors shall provide written notice of the CJ to all subcontractors hired to perform any portion of the Work. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this CJ. With regard to the activities undertaken pursuant to this CJ, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.    DEFINITIONS

4.      Unless otherwise expressly provided in this CJ, terms used in this CJ that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this CJ or its appendices, the following definitions shall apply solely for purposes of this CJ:

a.      "Affected Property" for the purposes of this CJ shall mean all real property related to the implementation of the portion of the remedy that Settling Defendant agrees to implement that EPA determines, at any time, that access or land, water, or other resource use restrictions, and/or Institutional Controls, are needed to implement the Remedial Action.

b.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

c.      "Consent Judgment" or "CJ" shall mean this consent judgment and all appendices attached hereto (listed in Section XXII). In the event of conflict between this CJ and any appendix, this CJ shall control.

d.      "Day" or "day" shall mean a calendar day. In computing any period of time under this CJ, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday, or federal or State holiday.

e.      "DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

f.      "Effective Date" shall mean the date upon which the approval of this CJ is recorded on the Court's docket.

g.      "EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

h.      "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

i.      "Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing deliverables submitted pursuant to this CJ, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this CJ, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 11 (Emergencies and Releases), Paragraph 12 (Community Involvement) (including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e)), Paragraph 29 (Access to Financial Assurance), Section VII (Remedy Review), Section VIII (Property Requirements) (including the cost of attorney time and any monies paid to secure or enforce access or land, water, or other resource use restrictions and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including the amount of just compensation), and Section XIII (Dispute Resolution), and all litigation costs.  Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendant has agreed to pay under this CJ that has accrued pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during the period from August 31, 2021 to the Effective Date.

j.      "Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that limit land, water, or other resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action and minimize the potential for human exposure to hazardous substances.

k.      "Interim Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, (a) paid by the United States in connection with the Site between August 31, 2021 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

l.      "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

m.      "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

n.      "Non-Settling Owner" shall mean an owner of property, other than Settling Defendant.

o.      "NYSDEC" shall mean the New York State Department of Environmental Conservation and any successor departments or agencies of the State.

p. "Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain, and monitor the effectiveness of the RA as specified in the SOW or any EPA-approved O&M Plan.

q. "Paragraph" shall mean a portion of this CJ identified by an Arabic numeral or an upper or lower case letter.

r. "Party" or "Parties" shall mean the United States or Settling Defendant or the United States and Settling Defendant, respectively.

s. "Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through August 31, 2021, plus Interest on such costs as accrued pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), through such date, with the exception of the costs incurred by EPA on City-owned property during the performance of the initial removal action to install concrete and concrete/lead shielding at the Site, and which costs were resolved in a CERCLA Settlement Agreement, Index No. CERCLA-02-2107-2009, dated August 10, 2017.

t. "Performance Standards" shall mean the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the ROD.

u. "Plaintiff" shall mean the United States.

v. "Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or other resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded in the appropriate land records office.

w. "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

x. "Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 26, 2017, by the Acting Director of the Emergency and Remedial Response Division (renamed thereafter the Superfund and Emergency Management Division), EPA Region 2, and all attachments thereto. The ROD is attached as Appendix A.

y. "Remedial Action" or "RA" shall mean that portion of the remedial action selected on September 26, 2017 and memorialized in the ROD as it relates to Settling Defendant-owned property and certain adjacent areas impacted by conditions related to the New York City sewer system.

z. "Remedial Design" shall mean those activities performed pursuant to the September 23, 2019 Unilateral Administrative Order for Remedial Design for the Site and the corresponding Statement of Work, regarding Settling Defendant-owned property.

aa. "Section" shall mean a portion of this CJ identified by a Roman numeral.

bb. "Settling Defendant" shall mean the City of New York.

5

cc.   "Site" shall mean the Wolff-Alport Chemical Company Superfund Site in Ridgewood, Queens County, New York, which includes the former facility located at 1125-1129 Irving Avenue, Ridgewood, Queens County, New York.

dd.   "State" shall mean the State of New York.

ee.   "Statement of Work" or "SOW" shall mean the document describing the activities Settling Defendant must perform to implement the RA and O&M regarding the Site, which is attached as Appendix B.

ff.   "Supervising Contractor" shall mean the principal contractor retained by Settling Defendant to supervise and direct the implementation of the Work under this CJ.

gg.   "Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

hh.   "Unilateral Administrative Order" or "UAO" shall mean the unilateral administrative order for Remedial Design issued by EPA to New York on September 23, 2019, which provided for the performance of a Remedial Design of the Remedial Action as it pertains to Settling Defendant-owned property.

ii.   "United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and any federal natural resource trustee.

jj.   "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27).

kk.   "Wolff-Alport Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

ll.   "Work" shall mean all activities and obligations Settling Defendant is required to perform under this CJ, except the activities required under Section XIX (Retention of Records).

## V.   GENERAL PROVISIONS

5.   **Objectives of the Parties**. The objectives of the Parties in entering into this CJ are to protect public health or welfare or the environment by the implementation of response activities at the Site by Settling Defendant, to pay response costs of Plaintiff, and to resolve the claims of Plaintiff against Settling Defendant as provided in this CJ.

6.   **Commitments by Settling Defendant**.  Settling Defendant shall finance and perform the Work in accordance with this CJ, the EPA-approved Remedial Design, and all

6

deliverables developed by Settling Defendant and approved or modified by EPA pursuant to this CJ. Settling Defendant shall pay the United States for its response costs as provided in this CJ.

7. **Compliance with Applicable Law**. Nothing in this CJ limits Settling Defendant's obligations to comply with the requirements of all applicable federal and state laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this CJ, if approved by EPA, shall be deemed to be consistent with the NCP as provided in Section 300.700(c)(3)(ii) of the NCP.

8. **Permits**.

a. As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-Site. Where any portion of the Work that is not on-Site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. Settling Defendant may seek relief under the provisions of Section XII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a. and required for the Work, provided that it has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c. This CJ is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.   PERFORMANCE OF THE WORK

9. **Coordination and Supervision**.

a. **Project Coordinators**.

(1) Settling Defendant's Project Coordinator must have sufficient technical expertise to coordinate the Work. Settling Defendant's Project Coordinator may not be an attorney representing Settling Defendant in this matter and may not act as the Supervising Contractor. Settling Defendant's Project Coordinator may assign other representatives, including other contractors, to assist in coordinating the Work.

(2) EPA shall designate and notify the Settling Defendant of EPA's Project Coordinator. EPA may designate other representatives, which may include its employees, contractors, and/or consultants, to oversee the Work. EPA's Project Coordinator will have the same authority as a remedial project manager and/or an on-scene coordinator, as described in the NCP. This includes the authority to halt the Work and/or to conduct or direct any necessary response action when he or she determines that conditions at the Site constitute an emergency or may present an immediate threat to public

7

health or welfare or the environment because of a potential release or threatened release of Waste Material.

(3)     Settling Defendant's Project Coordinators shall meet with EPA's Project Coordinator at least monthly.

b.     **Supervising Contractor**. Settling Defendant's proposed Supervising Contractor must have sufficient technical expertise to supervise the Work and a quality assurance system that complies with ANSI/ASQC E4-2004, Quality Systems for Environmental Data and Technology Programs: Requirements with Guidance for Use (American National Standard).

c.     **Procedures for Disapproval/Notice to Proceed**.

(1)     Settling Defendant shall award a remedial action contract within 365 days after EPA approval of the final RD Report.[1]  Settling Defendant shall provide the name, title, contact information, and qualifications of the Supervising Contractor, whose qualifications shall be subject to EPA's review for verification based on objective assessment criteria (e.g., experience, capacity, technical expertise) and their not having a conflict of interest with respect to the project.

(2)     EPA shall issue notices of authorization to proceed or disapproval regarding the proposed Project Coordinator and Supervising Contractor, as applicable. If EPA issues a notice of disapproval, the notice of disapproval will include an explanation as to why the proposed Project Coordinator and/or Supervising Contractor was disapproved, and the Settling Defendant shall, within 30 days, submit to EPA a supplemental proposed Project Coordinator and/or Supervising Contractor, as applicable, including a description of the qualifications of each. EPA shall issue a notice of authorization to proceed or disapproval regarding each supplemental proposed coordinator and/or contractor. Settling Defendant may select any coordinator/contractor covered by an authorization to proceed and shall, within 21 days, notify EPA of its selection.

(3)     Settling Defendant may change its Project Coordinator and/or Supervising Contractor, as applicable, by following the procedures of Paragraphs  9.c.(1) and  9.c.(2).

10.     **Performance of Work in Accordance with SOW**. Settling Defendant shall (a) perform the RA and (b) operate, maintain, and monitor the effectiveness of the RA, all in accordance with the SOW and all EPA-approved, conditionally-approved, or modified deliverables as required by the SOW. All deliverables required to be submitted for approval under the CJ or SOW shall be subject to approval by EPA in accordance with Paragraph 5.6 (Approval of Deliverables) of the SOW.

---

1 Should the Settling Defendant not receive any responsive bids during the Settling Defendant's procurement process, the Settling Defendant will be afforded up to an additional 365 days to meet this requirement.

8

11.     **Emergencies and Releases**. Settling Defendant shall comply with the emergency and release response and reporting requirements under Paragraph 3.4 (Emergency Response and Reporting) of the SOW. Subject to Section XV (Covenants by Plaintiff), nothing in this CJ, including Paragraph 3.4 of the SOW, limits any authority of Plaintiff (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site. If, because of Settling Defendant's failure to take appropriate response action under Paragraph 3.4 of the SOW, EPA takes such action, costs incurred by the United States under this Section shall constitute Future Response Costs, and Settling Defendant shall reimburse EPA under Section X (Payments for Response Costs) for all such costs.

12.     **Community Involvement**. If requested by EPA, Settling Defendant shall conduct community involvement activities under EPA's oversight as provided for in, and in accordance with, Section 2 (Community Involvement) of the SOW. Such activities may include, but are not limited to, designation of a Community Involvement Coordinator.  Costs incurred by the United States under this Section shall constitute Future Response Costs to be reimbursed under Section X (Payments for Response Costs).

13.     **Modification of SOW or Related Deliverables**.

a.     If EPA determines that it is necessary to modify the Work specified in the SOW and/or in deliverables developed under the SOW in order to achieve and/or maintain the Performance Standards or to carry out and maintain the effectiveness of the RA, and such modification is consistent with the scope of the remedy set forth in Paragraph 1.3 of the SOW, then EPA may notify Settling Defendant of such modification. If Settling Defendant objects to the modification, it may, within 60 days after EPA's notification, seek dispute resolution under Section XIII.

b.     The SOW and/or related work plans shall be modified (1) in accordance with any modification issued by EPA or (2) if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this CJ, and Settling Defendant shall implement all Work required by such modification. Settling Defendant shall incorporate the modification into the deliverable required under the SOW, as appropriate.

c.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this CJ.

14.     Nothing in this CJ, the SOW, or any deliverable required under the SOW constitutes a warranty or representation of any kind by Plaintiff that compliance with the Work requirements set forth in the SOW or related deliverable will achieve the Performance Standards.

9

## VII.    REMEDY REVIEW

15.    **Periodic Review**. Settling Defendant shall conduct, in accordance with Paragraph 3.3 (Meetings and Inspections) and Paragraph 4 (Reporting) of the SOW, monitoring and inspections to support EPA's reviews under Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and applicable regulations, of whether the RA is protective of human health and the environment.

16.    **Selection of Further Response Actions**. If EPA determines, at any time, that the RA is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

17.    **Opportunity to Comment**. Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. §§ 9613(k)(2) or 9617, the public will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

18.    **Settling Defendant's Obligation to Perform Further Response Actions**. If EPA selects further response actions relating to the Site, EPA may require Settling Defendant to perform such further response actions, but only to the extent that the reopener conditions in Paragraph 64 or 65 (United States' Pre- and Post-Certification Reservations) are satisfied. Settling Defendant may invoke the procedures set forth in Section XIII (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of Paragraph 64 or 65 are satisfied, (b) EPA's determination that the RA is not protective of human health and the environment, or (c) EPA's selection of the further response action. Disputes regarding EPA's determination that the RA is not protective or EPA's selection of further response actions shall be resolved pursuant to Paragraph 48 (Record Review).

19.    **Submission of Plans**. If Settling Defendant is required to perform further response actions pursuant to Paragraph 18, it shall submit a plan for such response activities to EPA for approval in accordance with the procedures of Section VI (Performance of the Work). Settling Defendant shall implement the approved plan in accordance with this CJ.

## VIII.    PROPERTY REQUIREMENTS

20.    **Agreements Regarding Access and Non-Interference.**

a.    Settling Defendant shall (i) provide Plaintiff, its representatives, contractors, and subcontractors with access at all reasonable times to Affected Property owned by Settling Defendant to conduct any activity regarding the Work under the CJ, including those listed below in Paragraph 20.c. (Access Requirements) and (ii) refrain from using such Affected Property in any manner that EPA determines will pose an unacceptable risk to human health or to the environment as a result of exposure to Waste Material, or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

b.        Settling Defendant shall, with respect to any Affected Property of a Non-Settling Owner, use best efforts to secure from such Non-Settling Owner an agreement, enforceable by Settling Defendant and by Plaintiff, providing that such Non-Settling Owner shall, (i) provide Settling Defendant and Plaintiff and their respective representatives, contractors, and subcontractors with access at all reasonable times to such Affected Property to conduct any activity regarding the Work under this CJ, including those activities listed in Paragraph 20.c (Access Requirements); and (ii) refrain from using such Affected Property in any manner that EPA determines will pose an unacceptable risk to human health or to the environment because of exposure to Waste Material, or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. Settling Defendant shall provide a copy of any such access agreement(s) to EPA.

c.        **Access Requirements**. The following is a list of activities for which access is required regarding the Affected Property:

(1)        Monitoring the Work;
(2)        Verifying any data or information submitted to the United States;
(3)        Conducting investigations regarding contamination at or near the Site;
(4)        Obtaining samples;
(5)        Assessing the need for, planning, or implementing additional response actions at or near the Site;
(6)        Assessing implementation of quality assurance and quality control practices as defined in the approved construction quality assurance quality control plan as provided in the SOW;
(7)        Implementing the Work pursuant to the conditions set forth in Paragraph 68 (Work Takeover);
(8)        Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XVIII (Access to Information);
(9)        Assessing Settling Defendant's compliance with the CJ;
(10)        Determining whether the Affected Property is being used in a manner that is prohibited or restricted or that may need to be prohibited or restricted under the CJ; and
(11)        Implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

d.        **Land, Water, or Other Resource Use Restrictions**. Settling Defendant shall prohibit activities that could interfere with the RA or otherwise cause or contribute to the spread of contaminants.

21.        **Best Efforts**. As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Defendant would use so as to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure access and/or use restriction agreements. If Settling Defendant is unable to accomplish what is required through "best efforts" in a timely manner, it shall notify EPA, and include a description of the steps taken to comply with the requirements. If EPA deems it appropriate, it may assist Settling Defendant in obtaining such access and/or use

11

restrictions, or take independent action. All costs incurred by the United States in providing such assistance or taking such action, including the cost of attorney time and the amount of monetary consideration or just compensation paid, constitute Future Response Costs to be reimbursed under Section X (Payments for Response Costs).

22.    If EPA determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are needed, Settling Defendant shall cooperate with EPA's efforts to secure and ensure compliance with such Institutional Controls.

23.    In the event of any Transfer of Affected Property that is owned by Settling Defendant, Settling Defendant shall, at least 45 days prior to any such conveyance, provide written notice to the transferee that the property is subject to this Consent Judgment and provide written notice to EPA of the proposed conveyance, including the name and address of the transferee. Settling Defendant also agrees to require that its successors-in-interest comply with the access requirements of Paragraph 20 and Section XVIII herein (Access to Information).

24.    Notwithstanding any provision of the CJ, Plaintiff retains all of its access authorities and rights, as well as all of its rights to require land, water, or other resource use restrictions and Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## IX.    FINANCIAL ASSURANCE

25.    In order to ensure completion of the Work, Settling Defendant shall secure financial assurance, initially in the amount of $6,600,000 ("Financial Assurance Amount"), for the benefit of EPA. The financial assurance must be one or more of the mechanisms listed below, in a form substantially identical to the relevant sample documents available from EPA or under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/, and satisfactory to EPA. The following are  methods of assuring adequate financing:

a.    A surety bond guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.    An irrevocable letter of credit, payable to or at the direction of EPA that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.    A trust fund established for the benefit of EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency;

d.    A policy of insurance that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction(s) and whose insurance operations are regulated and examined by a federal or state agency;

e.      A demonstration of sufficient financial resources to pay for the Work made by Settling Defendant, which shall consist of a demonstration that Settling Defendant satisfies the requirements of 40 C.F.R. Part 258.74(f).

26.      Within 30 days after the Effective Date, or 30 days after EPA's approval of the form and substance of Settling Defendant's financial assurance, whichever is later, Settling Defendant shall secure all executed and/or otherwise finalized mechanisms or other documents consistent with the EPA-approved form of financial assurance and shall submit such mechanisms and documents to EPA as specified in Section XX (Notices and Submissions).  If Settling Defendant seeks to provide financial assurance by means of a demonstration under Paragraph 25.e., Settling Defendant must, within 30 days of the Effective Date, perform the following:

a.      Demonstrate that Settling Defendant has:

i.      information showing that it has outstanding, rated, general obligation bonds that (i) are not secured by insurance, a letter of credit, or other collateral or guarantee and (ii) have a current rating of Aaa, Aa, A, or Baa as issued by Moody's, or AAA, AA, A, or BBB, as issued by Standard and Poor's on all such general obligation bonds; or

ii.      Such other form of financial insurance as EPA may approve in writing.

b.      Submit to EPA for Settling Defendant (1) a copy of an independent certified public accountant's report of the entity's financial statements for the latest completed fiscal year, which must not express an adverse opinion or disclaimer of opinion, and (2) a letter from its chief financial officer and a report from an independent certified public accountant substantially identical to the sample letter and reports available from EPA or under the "Financial Assurance - Settlements" subject list category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/.

27.      If Settling Defendant provides financial assurance by means of a demonstration under Paragraph 25.e., it must also:

a.      Annually resubmit the documents described in Paragraph 26.b. within 90 days after the close of Settling Defendant's fiscal year;

b.      Notify EPA within 30 days after Settling Defendant determines that it no longer satisfies the relevant financial test criteria and requirements set forth in this Section; and

c.      Provide to EPA, within 30 days of EPA's request, reports of the financial condition of Settling Defendant in addition to those specified in Paragraph 26.b. EPA may make such a request for financial documentation at any time based on a belief that the Settling Defendant may no longer meet the financial test requirements of this Section.

28.     Settling Defendant shall diligently monitor the adequacy of the financial assurance. If Settling Defendant becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, Settling Defendant shall notify EPA of such information within 7 days. If EPA determines that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, EPA will notify the Settling Defendant(s) of such determination. Settling Defendant shall, within 30 days after notifying EPA or receiving notice from EPA under this Paragraph, secure and submit to EPA for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. EPA may extend this deadline for such time as is reasonably necessary for the Settling Defendant(s), in the exercise of due diligence, to secure and submit to EPA a proposal for a revised or alternative financial assurance mechanism. Settling Defendant shall follow the procedures of Paragraph 30 (Modification of Financial Assurance) in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Defendant's inability to secure financial assurance in accordance with this Section does not excuse performance of any other obligation under this Settlement.

29.     **Access to Financial Assurance**.

a.     If EPA issues a notice of implementation of a Work Takeover under Paragraph 68.b., then, in accordance with any applicable financial assurance mechanism, if applicable, EPA is entitled to: (1) the performance of the Work; and/or (2) require that any funds assured be paid in accordance with Paragraph 29.d., below.

b.     If EPA is notified by the issuer of a financial assurance mechanism that it intends to cancel the mechanism, and Settling Defendant fails to provide an alternative financial assurance mechanism or demonstration in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with Paragraph 29.d.

c.     If, upon issuance of a notice of implementation of a Work Takeover under Paragraph 68, (1) EPA is unable for any reason to promptly secure the resources guaranteed under any applicable financial assurance mechanism, whether in cash or in kind, to continue and complete the Work, or if (2) the financial assurance is a demonstration under Paragraph 25.e., then EPA is entitled to demand an amount, as determined by EPA, sufficient to cover the cost of performing the remaining Work. Settling Defendant shall, within 14 days of such demand, pay the amount demanded as directed by EPA.

d.     Any amounts required to be paid under this Paragraph 29 shall be, as directed by EPA, (i) paid to EPA in order to facilitate the completion of the Work by EPA or by another person; or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the Federal Deposit Insurance Corporation ("FDIC"), in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the EPA Hazardous Substance Superfund or into the Wolff Alport Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

14

e.      All EPA Work Takeover costs that exceed the amount paid under this Paragraph 29 constitute Future Response Costs and shall be reimbursed as Future Response Costs under Section X (Payments for Response Costs).

30.      **Modification of Amount, Form, or Terms of Financial Assurance**. Settling Defendant may submit, on any anniversary of the Effective Date or at any other time agreed to by the Parties, a request to reduce the amount, or change the form or terms, of the financial assurance mechanism or demonstration. Any such request must be submitted to EPA in accordance with Paragraph 25, and it must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Defendant of its decision to approve or disapprove a requested reduction or change pursuant to this Paragraph. Settling Defendant may reduce or change the form or terms of the amount of the financial assurance mechanism only in accordance with EPA's approval. Any decision made by EPA on a request submitted under this Paragraph to change the form or terms of a financial assurance mechanism shall not be subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this CJ or in any other forum. Within 30 days after receipt of EPA's approval of the requested modifications pursuant to this Paragraph, Settling Defendant shall submit to EPA documentation of the reduced, revised, or alternative financial assurance mechanism or demonstration in accordance with Paragraph 26.

31.      **Release, Cancellation, or Discontinuation of Financial Assurance**. Settling Defendant may release, cancel, or discontinue any financial assurance provided under this Section only (a) if EPA issues a Certification of RA Completion of the SOW, (b) in accordance with EPA's approval of such release, cancellation, or discontinuation, or (c) if there is a dispute regarding the release, cancellation, or discontinuance of any financial assurance, in accordance with the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XIII (Dispute Resolution) in Settling Defendant's favor.

## X.      PAYMENTS FOR RESPONSE COSTS

32.      **Payment by Settling Defendant for United States Past Response Costs**.

a.      Within 60 days after the Effective Date, Settling Defendant shall pay to EPA $1,609,329.43 in payment for Past Response Costs. Payment shall be made in accordance with Paragraph 34.a. (instructions for past response cost payments).

b.      **Deposit of Past Response Costs Payment**. The total amount to be paid by Settling Defendant pursuant to Paragraph 32.a. shall be deposited by EPA into the Wolff Alport Superfund Site Special Account of the EPA Hazardous Substance Superfund.

33.      **Payments by Settling Defendant for Future Response Costs**. Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the NCP.

a.      **Periodic Bills**. On a periodic basis, EPA will send Settling Defendant a bill requiring payment that includes a cost summary report generated from EPA's E-Recovery system, which includes direct and indirect costs incurred by EPA, its contractors, and subcontractors. Plaintiff's billing will be accompanied by a brief narrative statement of the activities performed

15

Settling Defendant shall make all payments within 60 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 35, in accordance with Paragraph 34.b. (instructions for future response cost payments).

   b.  **Deposit of Future Response Costs Payments**. The total amount to be paid by Settling Defendant pursuant to Paragraph 33.a. (Periodic Bills) shall be deposited by EPA into the Wolff Alport Superfund Site Special Account of the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund, provided, however, that EPA may deposit a Future Response Costs payment directly into the EPA Hazardous Substance Superfund if, at the time the payment is received, EPA estimates that the Wolff Alport Superfund Site Special Account balance is sufficient to address currently anticipated future response actions to be conducted or financed by EPA at or in connection with the Site. Any decision by EPA to deposit a Future Response Costs payment directly into the EPA Hazardous Substance Superfund for this reason shall not be subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this CJ or in any other forum.

   34.  **Payment Instructions for Settling Defendant**.

   a.  **Payment of Past Response Costs**.
    (1)  The Financial Litigation Unit of the United States Attorney's Office for the Eastern District of New York shall provide Settling Defendant with instructions regarding making payment to DOJ on behalf of EPA. The instructions must include a Consolidated Debt Collection System ("CDCS") number to identify the payment made under this CJ.
    (2)  For all payments subject to this Paragraph, Settling Defendant shall make such payment by using https://www.pay.gov to the U.S. DOJ account, in accordance with the instructions provided under this Paragraph and including references to the CDCS Number, Site/Spill ID Number NYC200400810, and DJ Number 90-11-3-11741/1.
    (3)  For the payment made under this Paragraph, Settling Defendant shall send notices, including references to the CDCS, Site/Spill ID, and DJ numbers, to the United States, EPA, and the EPA Cincinnati Finance Center, all in accordance with Paragraph 89.

   b.  **Future Response Costs Payments and Stipulated Penalties**.
    (1)  For all payments subject to this Paragraph, Settling Defendant shall make such payments by Electronic Funds Transfer (EFT) through the Pay.gov website using the following link:  https://www.pay.gov/public/form/start/11751879.  Please ensure that the following information is included on the payment form:

     i.  Amount of Payment
     ii.  Name of remitter
     iii.  Site Name: Wolff-Alport Superfund Site
     iv.  Site/Spill identifier
     v.  DJ Number

(2)     For all payments made under this Paragraph, Settling Defendant shall make such payment by using https://www.pay.gov and include references to the Site/Spill ID and DJ numbers. At the time of any payment required to be made in accordance with this Paragraph, Settling Defendant shall send notices that payment has been made to the United States, EPA, and the EPA Cincinnati Finance Center, all in accordance with Paragraph 89.  All notices must include references to the Site/Spill ID and DJ numbers.

35.     **Contesting Future Response Costs**. Settling Defendant may submit a Notice of Dispute, initiating the procedures of Section XIII (Dispute Resolution), regarding any Future Response Costs billed under Paragraph 33 (Payments by Settling Defendant for Future Response Costs) if it determines that EPA has made a mathematical error, included a cost item that is not within the definition of Future Response Costs, or if it believes EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Such Notice of Dispute shall be submitted in writing within 30 days after receipt of the bill and must be sent to the United States pursuant to Section XX (Notices and Submissions). Such Notice of Dispute shall specifically identify the contested Future Response Costs and the basis for objection. If Settling Defendant submits a Notice of Dispute, Settling Defendant shall, within the 30-day period and as a requirement for initiating the dispute, (a) pay all uncontested Future Response Costs to the United States in accordance with Paragraph 34.b. and (b) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the FDIC, and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. Settling Defendant shall send to the United States, as provided in Section XX (Notices and Submissions), a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account**.** If the United States prevails in the dispute, Settling Defendant shall pay the sums due (with accrued interest) to the United States within 7 days after the resolution of the dispute. If Settling Defendant prevails, it need not make any payment and it can be disbursed the funds.  If Settling Defendant prevails concerning only an aspect of the contested costs, Settling Defendant shall pay any portion of the costs (plus associated accrued interest) for which it did not prevail to the United States within 7 days after the resolution of the dispute. Settling Defendant is entitled to any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with Paragraph 34.b. (Future Response Cost payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendant's obligation to reimburse the United States for its Future Response Costs.

36.     **Interest**. In the event that any payment for Past Response Costs or for Future Response Costs required under this Section is not made by the date required, Settling Defendant shall pay Interest on the unpaid balance. The Interest on a late Past Response Costs payment shall begin to accrue on the Effective Date. The Interest on a late Future Response Costs payment shall begin to accrue on the date that payment is due. The Interest shall accrue through the date of Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling

17

Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XIV (Stipulated Penalties).

## XI.   INDEMNIFICATION AND INSURANCE

37.   **Settling Defendant's Indemnification of the United States**.

a.   The United States does not assume any liability by entering into this CJ or by virtue of any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendant shall indemnify, save, and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities pursuant to this CJ, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA. Further, Settling Defendant agrees to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this CJ. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this CJ. Neither Settling Defendant nor any such contractor shall be considered an agent of the United States.

b.   The United States shall give Settling Defendant notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph and shall consult with Settling Defendant prior to settling any such claim.

38.   Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendant shall indemnify, save, and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

39.   **Insurance**. Settling Defendant is self-insured and represents that it has and will maintain adequate insurance coverage or indemnification for liabilities for injuries or damages to persons or property that may result from the activities to be conducted by or on behalf of Settlement Defendant pursuant to this CJ.  For the duration of the CJ, Settling Defendant shall satisfy, or shall ensure that its contractors or sub-contractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant under this CJ.

18

## XII.    FORCE MAJEURE

40.    "Force majeure," for purposes of this CJ, is defined as any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of any obligation under this CJ despite Settling Defendant's best efforts to fulfill the obligation. The requirement that Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

41.    If any event occurs or has occurred that may delay the performance of any obligation under this CJ for which Settling Defendant intends or may intend to assert a claim of it being a force majeure event, Settling Defendant shall notify EPA's Project Coordinator orally or, in his or her absence, the Chief of the New York Remediation Branch, EPA Region 2, within 48 hours of when Settling Defendant first knew that the event might cause a delay. Within 14 days thereafter, Settling Defendant shall provide in writing to EPA the following: an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendant's rationale for attributing such delay to a force majeure event; and a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure event. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors or subcontractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late or incomplete notice, is able to assess to its satisfaction whether the event is a force majeure event under Paragraph 40 and whether Settling Defendant has exercised its best efforts under Paragraph 40, EPA may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely or complete notices under this Paragraph.

42.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this CJ that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Settling Defendant in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

43. If Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIII (Dispute Resolution) regarding EPA's decision, it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 40 and 41. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this CJ identified to EPA and the Court.

44. The failure by EPA to timely complete any obligation under the CJ or under the SOW is not a violation of the CJ, provided, however, that if such failure prevents Settling Defendant from meeting one or more deadlines in the SOW, Settling Defendant may seek relief under this Section.

## XIII.  DISPUTE RESOLUTION

45. Unless otherwise expressly provided for in this CJ, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this CJ. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendant that have not been disputed in accordance with this Section.

46. A dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute. Any dispute regarding this CJ shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the Parties.

47. **Statements of Position**.

a. In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within  14 days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendant. The Statement of Position shall specify Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 48 (Record Review) or 49.

b. Within 14 days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 48 (Record Review) or 49. Within 7 days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

20

       c.      If there is disagreement between EPA and Settling Defendant as to whether dispute resolution should proceed under Paragraph 48 (Record Review) or 49, the Parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 48 and 49.

48.      **Record Review**. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this CJ, and the adequacy of the performance of response actions taken pursuant to this CJ. Nothing in this CJ shall be construed to allow any dispute by Settling Defendant regarding the validity of the ROD's provisions.

       a.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by Settling Defendant.

       b.      The Director of the Superfund and Emergency Management Division, EPA Region 2, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 48.a.  This decision shall be binding upon EPA and Settling Defendant, subject only to the right to seek judicial review pursuant to subparagraphs 48.c. and .d.

       c.      Any administrative decision made by EPA pursuant to Paragraph 48.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendant with the Court and served on the United States within 10 days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this CJ. The United States may file a response to Settling Defendant's motion.

       d.      In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund and Emergency Management Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 48.a.

49.      Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a.      The Director of the Superfund and Emergency Management Division, EPA Region 2, will issue a final decision resolving the dispute based on the statements of position and reply, if any, served under Paragraph 47. The Superfund and Emergency Management Division Director's decision shall be binding on EPA and Settling Defendant unless, within 10 days after receipt of the decision, Settling Defendant files with the Court and serves on the United States a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the CJ. The United States may file a response to Settling Defendant's motion.

b.      Consistent with Paragraph L of Section I (Background) regarding record review of ROD and Work under Section 113(j)) of CERCLA, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

50.      The invocation of formal dispute resolution procedures under this Section does not extend, postpone, or affect in any way any obligation of Settling Defendant under this CJ, except as provided in Paragraph 35 (Contesting Future Response Costs), as agreed by EPA, or as determined by the Court. Stipulated penalties with respect to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute, as provided in Paragraph 58. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this CJ. In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIV (Stipulated Penalties).

## XIV.  STIPULATED PENALTIES

51.      Settling Defendant shall be liable to the United States for stipulated penalties in the amounts set forth in Paragraphs 52.a. and 53 for failure to comply with the obligations specified in Paragraphs 52.b. and 53, unless excused under Section XII (Force Majeure). "Comply" as used in the previous sentence includes compliance by Settling Defendant with all applicable requirements of this CJ, within the deadlines established under this CJ. If an initially submitted or resubmitted deliverable contains a material defect, and the deliverable is disapproved or modified by EPA under Paragraph 5.6(a) (Initial Submissions) or 5.6(b) (Resubmissions) of the SOW because of such material defect, then the material defect shall constitute a lack of compliance for purposes of this Paragraph.

52.      **Stipulated Penalty Amounts - Payments, Financial Assurance, Major Deliverables, and Other Milestones.**

a.      The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 52.b:

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $2,000 |
| 15th through 30th day | $4,000 |
| 31st day and beyond | $8,000 |

22

b. **Obligations.**

(1)     Payment of any amount due under Section X (Payments for Response Costs);

(2)     Establishment and maintenance of financial assurance in accordance with Section IX (Financial Assurance);

(3)     Establishment of an escrow account to hold any disputed Future Response Costs under Paragraph 35 (Contesting Future Response Costs);

(4)     Submission and, if necessary, revision and resubmission of any plan, report, or other deliverable required by Section VI (Performance of the Work) or by the SOW or by any plan that is prepared pursuant to Section VI or the SOW and approved by EPA;

(5)     Any deadline imposed by the SOW or by any plan that is prepared pursuant to Section VI or the SOW and approved by EPA;

(6)     Obligations imposed by Paragraph 3.4 (Emergency Response and Reporting) of the SOW;

(7)     Performance of pre-remedial design activities and preparation of the Remedial Design in accordance with the ROD, the SOW, and this CJ;

(8)     Implementation of the Remedial Action in accordance with the ROD, the SOW, and this CJ; and

(9)     Modification of the SOW or related work plans pursuant to Paragraph 13, and implementation of the work called for by such modification in accordance with the modified SOW or work plan.

53.     **Stipulated Penalty Amounts – Other Deliverables**. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate deliverables pursuant to the CJ other than those specified in Paragraph 52.b.:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $1,000 |
| 15th through 30th day | $2,000 |
| 31st day and beyond | $4,000 |

54.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 68 (Work Takeover), Settling Defendant shall be liable for a stipulated penalty in the amount of $100,000. Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 29 (Access to Financial Assurance) and 68 (Work Takeover).

55.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue until the day on which the noncompliance is corrected. However, stipulated penalties shall not accrue as follows: (a) with respect to a deficient submission under Paragraph 5.6 (Approval of Deliverables) of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (b) with respect to a decision by

23

the Director of the Superfund and Emergency Management Division , EPA Region 2, under Paragraph 48.b. or 49.a. of Section XIII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this CJ shall prevent the simultaneous accrual of separate penalties for separate violations of this CJ.

56.     Following EPA's determination that Settling Defendant has failed to comply with a requirement of this CJ, EPA may provide Settling Defendant written notification of the same and describe the noncompliance. EPA may send Settling Defendant a written demand for payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendant of a violation.

57.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIII (Dispute Resolution) within the 30-day period after Settling Defendant's receipt of the demand. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with Paragraph 34.b. (future response cost payments).

58.     Penalties shall continue to accrue as provided in Paragraph 55 during any dispute resolution period but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 15 days after the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 58.c., below;

c.     If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant to the extent that it prevails.

59.     If Settling Defendant fails to pay stipulated penalties when due, Settling Defendant shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated

24

penalties are due pursuant to Paragraph 58 until the date of payment; and (b) if Settling Defendant fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 56 until the date of payment. If Settling Defendant fails to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

60.     The payment of penalties and Interest, if any, shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this CJ.

61.     Nothing in this CJ shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available to it by virtue of Settling Defendant's violation of this CJ or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this CJ, except in the case of a willful violation of this CJ.

62.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this CJ.

## XV.   COVENANTS BY PLAINTIFF

63.     **Covenants for Settling Defendant by United States**. Except as provided in Paragraphs 64 and 65 (United States' Pre- and Post-Certification Reservations), and 67 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA relating to the Site, Past Response Costs, and Future Response Costs. Except with respect to future liability, these covenants shall take effect upon the Effective Date. With respect to future liability, these covenants shall take effect upon Certification of RA Completion by EPA of the SOW. These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this CJ. These covenants extend only to Settling Defendant and do not extend to any other person.

64.     **United States' Pre-Certification Reservations**. Notwithstanding any other provision of this CJ, the United States reserves, and this CJ is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Site and/or to pay the United States for additional costs of response relating to the Site if, (a) prior to Certification of RA Completion, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the RA is not protective of human health or the environment.

65.     **United States' Post-Certification Reservations**. Notwithstanding any other provision of this CJ, the United States reserves, and this CJ is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order,

seeking to compel Settling Defendant to perform further response actions relating to the Site and/or to pay the United States for additional costs of response relating to the Site if, (a) subsequent to Certification of RA Completion, (1) conditions at the Site previously unknown to EPA are discovered, or (2) information previously unknown to EPA is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the RA is not protective of human health or the environment.

66.    For purposes of Paragraph 64 (United States' Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date that the ROD was signed and set forth in the ROD for the Site and the administrative record supporting the ROD. For purposes of Paragraph 65 (United States' Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of RA Completion and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this CJ prior to Certification of RA Completion.

67.    **General Reservations of Rights**. The United States reserves, and this CJ is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiff's covenants. Notwithstanding any other provision of this CJ, the United States reserves all rights against Settling Defendant with respect to:

a.    liability for failure by Settling Defendant to meet a requirement of this CJ;

b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material unrelated to the Site;

c.    liability based on the ownership of the Site by Settling Defendant, or a portion thereof, when such ownership commences after signature of this CJ by Settling Defendant;

d.    liability based on the operation of the Site by Settling Defendant, or a portion thereof, when such operation commences after signature of this CJ by Settling Defendant and does not arise solely from Settling Defendant's performance of the Work;

e.    liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this CJ by Settling Defendant;

f.    liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.    criminal liability;

h.    liability for violations of federal or state law that occur during or after implementation of the Work; and

26

i.       liability, prior to achievement of Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Deliverables).

68.   **Work Takeover**.

a.       In the event that EPA determines that Settling Defendant (1) has ceased implementation of any portion of the Work, (2) is seriously or repeatedly deficient or late in its performance of the Work, or (3) is implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendant. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant with a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.       If, after expiration of the 10-day notice period specified in Paragraph 68.a., Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA will notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph. Funding of Work Takeover costs is addressed under Paragraph 29 (Access to Financial Assurance).

c.       Settling Defendant may invoke the procedures set forth in Paragraph 48 (Record Review) to dispute EPA's implementation of a Work Takeover under Paragraph 68.b. However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 68.b. until the earlier of (1) the date that Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 48 (Record Review) requiring EPA to terminate such Work Takeover.

69.   Notwithstanding any other provision of this CJ, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XVI.   COVENANTS BY SETTLING DEFENDANT

70.   **Covenants by Settling Defendant**. Subject to the reservations in Paragraph 72, Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Work, Past Response Costs, and Future Response Costs and this CJ, including, but not limited to:

a.       any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through Sections 106(b)(2), 107, 111, 112 or 113 of CERCLA, or any other provision of law;

    b.  any claims under Sections 107 or 113 of CERCLA, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law regarding the Site and this CJ; or

    c.  any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the New York State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

  71.  Except as provided in Paragraphs 74 (Waiver of Claims by Settling Defendant) and 80 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XV (Covenants by Plaintiff), other than in Paragraphs 67.a. (claims for failure to meet a requirement of the CJ), 67.g. (criminal liability), and 67.h. (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

  72.  Settling Defendant reserves, and this CJ is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendant's deliverables or activities.

  73.  Nothing in this CJ shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

  74.  **Waiver of Claims by Settling Defendant**.

    a.  Settling Defendant agrees not to assert any claims and agree to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that it may have as follows:

      (1)  **De Micromis Waiver**. For all matters relating to the Site against any person where the person's liability to Settling Defendant with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material

28

containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials;

(2)      *De Minimis*/**Ability to Pay Waiver**. For response costs relating to the Site against any person that has entered into a final CERCLA Section 122(g) *de minimis* settlement or a final settlement based on limited ability to pay with EPA with respect to the Site.

b.      **Exceptions to Waivers**.

(1)      The waivers under this Paragraph shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person otherwise covered by such waivers if such other person asserts a claim or cause of action relating to the Site against such Settling Defendant.

(2)      The waiver under Paragraph 74.a.1. (De Micromis Waiver) shall not apply to any claim or cause of action against any person otherwise covered by such waiver if EPA determines any of the following: (i) the materials containing hazardous substances contributed to the Site by such person contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site; (ii) such person has failed to comply with any information request or administrative subpoena issued pursuant to Section 104(e) or 122(e)(3)(B) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e)(3)(B), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site; or (iii) if such person has been convicted of a criminal violation for the conduct to which the waiver would apply and that conviction has not been vitiated on appeal or otherwise.

## XVII. EFFECT OF SETTLEMENT; CONTRIBUTION

75.      Except as provided in Paragraph 74 (Waiver of Claims by Settling Defendant), nothing in this CJ shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this CJ. Except as provided in Section XVI (Covenants by Settling Defendant), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this CJ diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

76.      The Parties agree, and by entering this CJ this Court finds, that this CJ constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution

29

actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this CJ. The "matters addressed" in this CJ are the Work and Past Response Costs and Future Response Costs.

77.     The Parties further agree, and by entering this CJ this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this CJ constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

78.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this CJ, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

79.     Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this CJ, notify in writing the United States within 10 days after service of the complaint on Settling Defendant. In addition, Settling Defendant shall notify the United States within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

80.     **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and agree not to maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XV (Covenants by Plaintiff).

## XVIII.     ACCESS TO INFORMATION

81.     Settling Defendant shall provide to EPA, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within Settling Defendant's possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this CJ, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work. Settling Defendant shall also make available to EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

82.     **Privileged and Protected Claims**.

a.     Settling Defendant may assert that all or part of a Record requested by Plaintiff is privileged or protected as provided under federal law, in lieu of providing the Record, provided Settling Defendant complies with Paragraph 82.b., and except as provided in Paragraph 82.c.

30

b.      If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiff with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Defendant shall provide the Record to Plaintiff in redacted form to mask the privileged or protected portion only. Settling Defendant shall retain all Records that it claims to be privileged or protected until Plaintiff has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Settling Defendant's favor.

c.      Settling Defendant agrees not to make any claim of privilege or protection regarding the following: (1) any data regarding the Site, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or (2) the portion of any Record that Settling Defendant is required to create or generate pursuant to this CJ.

83.      **Business Confidential Claims**. Settling Defendant may assert that all or part of a Record provided to Plaintiff under this Section or Section XIX (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Settling Defendant shall segregate and clearly identify all Records or parts thereof submitted under this CJ for which Settling Defendant asserts business confidentiality claims. Records that Settling Defendant claims to be confidential business information will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendant.

84.      If relevant to the proceeding, the Parties agree that validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this CJ.

85.      Notwithstanding any provision of this CJ, Plaintiff retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIX.   RETENTION OF RECORDS

86.      Until 10 years after EPA's Certification of Work Completion of the SOW, Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendant must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any

31

manner to the performance of the Work, provided, however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any retention policy of Settling Defendant to the contrary.

87.     At the conclusion of this record retention period, Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, and except as provided in Paragraph 82 (Privileged and Protected Claims), Settling Defendant shall deliver any such Records to EPA.

88.     Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State and that it has fully complied with any and all EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XX.   NOTICES AND SUBMISSIONS

89.     All approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, and requests specified in this CJ must be in writing unless otherwise specified. Whenever, under this CJ, notice is required to be given, or a report or other document is required to be sent, by one Party to another, it must be directed to the person(s) specified below at the address(es) specified below. Any Party may change the person and/or address applicable to it by providing notice of such change to all Parties. All notices under this Section are effective upon receipt, unless otherwise specified. Notices required to be sent to EPA, and not to the United States, should not be sent to the DOJ. Except as otherwise provided, notice to a Party by email (if that option is provided below) is preferred, but notice by regular mail in accordance with this Section also satisfies any notice requirement of the CJ regarding such Party.

**As to the United States**:                 EES Case Management Unit
                                             U.S. Department of Justice
                                             Environment and Natural Resources Division
                                             P.O. Box 7611
                                             Washington, D.C. 20044-7611
                                             eescdcopy.enrd@usdoj.gov

                                             Ekta R. Dharia
                                             Assistant U.S. Attorney
                                             Eastern District of New York
                                             271-A Cadman Plaza East
                                             Brooklyn, New York 11201
                                             ekta.dharia@usdoj.gov

**As to EPA**:                               U.S. EPA Region 2
                                             Superfund and Emergency Management Division

290 Broadway, 20th Floor
New York, NY 10007
Attn: Remedial Project Manager, Wolff Alport
Superfund Site
mongelli.thomas@epa.gov

**As to EPA Cincinnati Finance Center**:

EPA Cincinnati Finance Center
26 W. Martin Luther King Drive
Cincinnati, Ohio 45268
cinwd_acctsreceivable@epa.gov

**As to Settling Defendant**:

Ron Weissbard
Director of Superfund and Hazardous Materials
NYC Department of Environmental Protection
59-17 Junction Blvd.
Flushing, NY 11373
rweissbard@dep.nyc.gov

David Varoli
Deputy Commissioner and General Counsel
NYC Department of Design and Construction
30-30 Thomson Ave.
Long Island City, NY 11101
varolid@ddc.nyc.gov

General Counsel
Division of Legal Affairs
NYC Department of Transportation
55 Water St., 9th Floor
New York, NY 10041

## XXI.   RETENTION OF JURISDICTION

90.     This Court retains jurisdiction over both the subject matter of this CJ and Settling Defendant for the duration of the performance of the terms and provisions of this CJ for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this CJ, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIII (Dispute Resolution).

## XXII. APPENDICES

91.     The following appendices are attached to and incorporated into this CJ:

"Appendix A" is the ROD.
"Appendix B" is the SOW.
"Appendix C" is the description and/or map of the Site.

33

## XXIII.   MODIFICATION

92.   Except as provided in Paragraph 13 (Modification of SOW or Related Deliverables), material modifications to this CJ, including the SOW, shall be in writing, signed by the United States and Settling Defendant, and shall be effective upon approval by the Court. Except as provided in Paragraph 13, non-material modifications to this CJ, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendant. A modification to the SOW shall be considered material if it implements a ROD amendment that fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).

93.   Nothing in this CJ shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this CJ.

## XXIV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

94.   This CJ shall be lodged with the Court for at least 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the CJ disclose facts or considerations that indicate that the CJ is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this CJ without further notice.

95.   If for any reason the Court should decline to approve this CJ in the form presented, this agreement is voidable at the sole discretion of any Party, and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXV. SIGNATORIES/SERVICE

96.   Each of the undersigned representatives of Settling Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this CJ and to execute and legally bind the respective Party he or she represents to this document.

97.   Settling Defendant agrees not to oppose entry of this CJ by this Court or to challenge any provision of this CJ unless the United States has notified Settling Defendant in writing that it no longer supports entry of the CJ.

98.   Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this CJ. Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this CJ.

## XXVI.     FINAL JUDGMENT

99.     This CJ and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the CJ. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this CJ.

100.     Upon entry of this CJ by the Court, this CJ shall constitute a final judgment between and among the United States and Settling Defendant. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 25 DAY OF July   , 20 23

/S/ Frederic Block
_____
United States District Judge

35

Signature Page for CJ regarding the Wolff Alport Chemical Company Superfund Site

**FOR THE UNITED STATES OF AMERICA:**

Dated  June 2, 2023

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

BREON PEACE
United States Attorney
Eastern District of New York

*Ekta Dharia*
_____
EKTA R. DHARIA
Assistant United States Attorney
Eastern District of New York
217 Cadman Plaza East
Brooklyn, New York 11201
718-254-7520
ekta.dharia@usdoj.gov

36

Signature Page for CJ regarding the Wolff Alport Chemical Company Superfund Site

Pat Evangelista

Digitally signed by Pat Evangelista
Date: 2023.05.09 15:17:31 -04'00'

Pat Evangelista, Director
Superfund and Emergency Management Division
U.S. Environmental Protection Agency
290 Broadway
New York, NY  10007-1866

37

Signature Page for CJ regarding the Wolff Alport Chemical Company Superfund Site

**FOR** _____ :
Christopher Gene King

4/25/23
Dated

CHRISTOPHER GENE KING
Name (print):  Christopher Gene King
Title:              Senior Counsel
Address:         100 Church Street
                      New York, NY 10007

Agent Authorized to Accept Service   Name (print): CHIEF, ENVIRONMENTAL LAW DIVISION
on Behalf of Above-signed Party:        Title:
                                                          Company:  NEW YORK CITY LAW DEP
                                                          Address:   100 CHURCH ST
                                                                          NEW YORK NY 10009
                                                          Phone:      212 . 356 . 2670
                                                          email:        SERVICEECF@LAW.NYC.GOV